ORIGINAL

FILED
JUL 6 2006
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| BECKER PARTNERS,<br>by and through Kathleen Becker,<br>A Partner Other Than the Tax Matters Partner,<br><br>Petitioner,<br><br>v.<br><br>United States of America,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Docket No. 06-505 T |

**COMPLAINT FOR READJUSTMENT OF PARTNERSHIP ITEMS UNDER INTERNAL REVENUE CODE SECTION 6226**

Plaintiff Becker Partners, by and through Kathleen Becker, a Notice Partner other than the Tax Matters Partner, files this Complaint pursuant to Section 6226 of the Internal Revenue Code of 1986, as amended (the "Code") and Appendix F of the Rules of the United States Court of Federal Claims, petitioning for the readjustment of partnership items that were adjusted by the Internal Revenue Service (the "Service") in a Notice of Final Partnership Administrative Adjustment (an "FPAA") issued to Becker Partners (the "Partnership") with respect to the Partnership's taxable year ended December 31, 1998, and as the basis for its case alleges as follows:

## I. THE PARTIES

1. Becker Partners ("the Partnership") was formed as a general partnership on or about June 12, 1998 under the laws of the State of Missouri. The original partners in Becker Partners were Richard Becker (a 99% partner) and Kathleen Becker (a 1% partner).

2. On July 2, 1998, Richard Becker transferred his 99% interest in Becker Partners to his single member limited liability company RCB St. Paul Investments LLC ("RCB").

3. On July 3, 1998, RCB transferred its 99% interest in Becker Partners to Becker St. Paul Corporation. Becker St. Paul Corporation was an S corporation wholly owned by Richard Becker until July 3, 1998, when he sold 990 shares of the Class B non-voting stock to the Becker 1998 Family Trust.

4. As a result of RCB's July 3, 1998 transfer of its interest in Becker Partners to Becker St. Paul Corporation, Becker Partners was "considered as terminated" pursuant to Code section 708. Becker Partners therefore filed a final Form 1065 U.S. Partnership Return of Income for the short taxable year ended July 2, 1998 with the Internal Revenue Service Center located in Kansas City, MO on or about September 3, 1999.

5. On July 3, 1998, a "new" Becker Partners (with the same name and taxpayer identification number as the old Becker Partners) came into being for tax purposes with Kathleen Becker and Becker St. Paul Corporation as its partners. The "new" Becker Partners filed its own Form 1065 U.S. Partnership Return of Income for the period July 3, 1998 through December 31, 1998 with the Internal Revenue Service Center located in Kansas City, MO on or about September 3, 1999.

6. During the time at issue, Becker Partners had its place of business at 765 St. Paul Rd., Ellisville, MO, 63021, and Becker Partners continues to have its address at that location. The Partnership's taxpayer identification number is 43-1818459.

7. On February 8, 2006, the Service issued an FPAA for the Partnership's short tax year ended July 2, 1998. (The "July FPAA"). The July FPAA was issued by the Acting Technical Services Territory Manager of the Service at Boston, MA.

8. On February 8, 2006, the Service also issued an FPAA (a copy of which is attached hereto and marked as Exhibit A) for the Partnership's tax year ended December 31, 1998. (The

"December FPAA"). The December FPAA was also issued by the Acting Technical Services Territory Manager of the Service at Boston, MA.

9. This Complaint challenges the adjustments made in the December FPAA. A second complaint is being filed in this Court contemporaneous with this complaint to challenge the July FPAA.

10. The defendant is the United States of America, having taken the actions complained of through its agency, the Internal Revenue Service.

## II. JURISDICTION and RULES OF THE UNITED STATES COURT OF FEDERAL CLAIMS App. F Rules 1 and 2

11. This Court has jurisdiction pursuant to 28 U.S.C. § 1508 and 26 U.S.C. § 6226(b).

12. The Partnership timely filed its Form 1065 U.S. Return of Partnership Income for the tax year ended December 31, 1998 with the Service at Kansas City, MO.

13. The December FPAA was issued on February 8, 2006 and was issued by the IRS Office in Boston, MA.

14. The December FPAA was issued with respect to Becker Partners' taxable year ended December 31, 1998.

15. Pursuant to Code section 6226(e)(1), prior to the filing of this Complaint, Richard and Kathleen Becker deposited with the Service the total amount of $3,475,000, which includes the amount by which their joint income tax liability would be increased if the treatment of the "partnership items" on the Partnership's tax return was made consistent with the treatment of "partnership items" on the Partnership return, as adjusted by the December FPAA.

16. The deposits were made on May 31, 2006 and were sent to Revenue Agent Philip Vinciguerra in the IRS Southboro, Massachusetts, office.

17. Kathleen Becker is a Notice Partner in Becker Partners within the meaning of Code section 6231(a)(8).

18. Kathleen Becker has an address at 765 St. Paul Rd., Ellisville, MO 63021.

19. None of Becker Partners' partnership items with respect to Kathleen Becker have become non-partnership items by reasons of any event described in Code Section 6231(b).

20. The Tax Matters Partner of the Partnership was Richard Becker until July 3, 1998, when Becker St. Paul Corporation became the Tax Matters Partner. Mr. Becker's address is 765 St. Paul Rd., Ellisville, MO 63021. Becker St. Paul Corporation also has its address at 765 St. Paul Rd., Ellisville, MO 63021.

21. Neither Richard Becker nor Becker St. Paul Corporation have filed a complaint for readjustment of partnership items within the period specific in Code section 6226(a).

22. Becker Partners and Kathleen Becker have satisfied all conditions precedent to filing this suit.

## III. DESCRIPTION OF THE TRANSACTION

23. On or about June 24, 1998, Richard Becker through his wholly-owned single member limited liability company RCB engaged in a transaction commonly referred to as a "short sale," in which he sold $11 million face value Treasury Notes (the "Treasury Notes") maturing in October, 1999, for $11,006,872.00 plus interest of $94,157.61, for total proceeds equal to $11,101,029.61. The Treasury Notes were borrowed from his broker and sold by him because of his belief that interest rates would rise in the short term, which would allow him to buy Treasury Notes in order to "cover" the short sale (i.e., return the borrowed securities to his broker) at a price lower than that for which he sold the borrowed Treasury Notes, and result in economic gain.

24. On June 26, 1998, he transferred the $11,101,029.61 of proceeds from the sale of the securities, together with the short Treasury Note position and $120,000 of margin cash as a contribution to capital of Becker Partners. The Partnership had been formed for the purpose of making investments.

25. On June 26, 1998, the Partnership closed its short securities position by buying Treasury Notes in the market and "covering" its short position.

26. On July 2, 1998, Mr. Becker contributed all of his shares of MJ Struckel and Company, Inc., a Missouri corporation ("MJ Struckel"), to the Partnership as a contribution to its capital.

27. On July 3, 1998, Mr. Becker, who then held his interest in Becker Partners through RCB, contributed his 99% interest in the Partnership to Becker St. Paul Corporation as a contribution to its capital. The Partnership made, with respect to its 1998 taxable year, an election pursuant to Code section 754.

28. On July 29, 1998, the Partnership sold to an unrelated third party its shares in MJ Struckel stock.

## IV. THE SERVICE'S POSITION

29. On February 8, 2006, the Service issued the July FPAA to Becker Partners, adjusting how Becker Partners reported certain items on its Form 1065 for the short taxable year ending July 2, 1998. The primary adjustment made by the Service in the July FPAA is to decrease the partners' collective outside basis in Becker Partners by $11,006,872, although the Service raises several alternative arguments. The July FPAA also asserts a 40% accuracy-related penalty against Becker Partners or, alternatively a 20% accuracy-related penalty.

30. Also on February 8, 2006, the Service issued the December FPAA to Becker Partners. The adjustments made by the Service in the December FPAA are almost entirely

duplicative of those made in the July FPAA. The December FPAA also asserts a 40% accuracy-related penalty against Becker Partners or, alternatively a 20% accuracy-related penalty.

31. This complaint challenges all of the adjustments made by the Service in the December FPAA. A separate complaint will be filed in this Court to contest the adjustments made by the Service in the July FPAA.

## V. ASSIGNMENTS OF ERROR

32. The December FPAA is invalid because it was issued on February 8, 2006, which is more than three years after Becker Partners filed its tax return for the taxable year ended December 31, 1998, in violation of Code section 6229, which governs the period of limitations for making assessments with respect to the items adjusted in the FPAA.

33. To the extent that the December FPAA might be valid, the Service erred with respect to each and every determination and alternative position in the December FPPA. More specifically:

a. The determination in the December FPAA that Becker Partners was not a partnership is incorrect in law and fact.

b. The December FPAA incorrectly determined that Becker Partners "was formed and/or availed of solely for the purpose of tax avoidance" and that the transactions "had no business purpose, lacked economic substance, and, in fact and substance, constitute[] an economic sham." (Ex. A, Explanation of Items ¶2.)

c. The December FPAA incorrectly determined that Treas. Reg. § 1.701-2 is applicable, or if it is applicable, that it would operate to change the tax reporting at issue. In the alternative, the December FPAA incorrectly relied on Treas. Reg. § 1.701-2 because it is invalid.

d. The December FPAA incorrectly determined that neither Becker Partners nor its partners entered into the short sales or acquired M.J. Struckel stock with a profit motive for purposes of Code section 165(c)(2).

e. The December FPAA incorrectly determined that the amount of Becker Partners' liabilities under Code section 752 included an obligation to close the short sale position in the amount of $11,006,872.

f. The December FPAA erred in determining that there was no excess of outside basis over inside basis.

34. The December FPAA is further in error as to its assertion of penalties, having erred in determining that:

a. "the adjustments of partnership items of Becker Partners are attributable to a tax shelter for which no substantial authority has been established for the position taken, and for which there was no showing of reasonable belief by the partnership or its partners that the position taken was more likely than not the correct treatment of the tax shelter and related transactions" (Ex. A, Explanation of Items ¶7);

b. "all of the underpayments of tax resulting from those adjustments of partnership items are attributable to, at a minimum, (1) substantial understatements of income tax, (2) gross valuation misstatement(s), or (3) negligence or disregarded rules or regulations" (*Id.*);

c. "[t]here has not been a showing by the partnership or any of its partners that there was reasonable cause for any of the resulting underpayments, that [the partnership] or any of its partners acted in good faith, or that any other exceptions to the [accuracy-related] penalty apply" (*Id.*);

d. "at a minimum, the accuracy-related penalty under Section 6662 of the Internal Revenue Code applies to all underpayments of tax attributable to adjustments of partnership items of [the Partnership]" (*Id.*); and

e. "[t]he penalty shall be imposed on the components of underpayment as follows: (A) a 40 percent penalty shall be imposed on the portion of any underpayment attributable to the gross valuation misstatement as provided by Sections 6662(a), 6662(b)(3), 6662(e), and 6662(h) of the Internal Revenue Code. (B) a 20 percent penalty shall be imposed on the portion of the underpayment attributable to negligence or disregard of rules and regulations as provided by Sections 6662(a), 6662(b)(1), [and] 6662(c) of the Internal Revenue Code. (C) a 20 percent penalty shall be imposed on the underpayment attributable to the substantial understatement of income tax as provided by sections 6662(a), 6662(b)(2), and 6662(d) of the Internal Revenue Code.
(D) a 20 percent penalty shall be imposed on the underpayment attributable to the substantial valuation misstatement as provided by Sections 6662(a), 6662(b)(3), and 6662(e) of the Internal Revenue Code." (Ex. A, Explanation of Items ¶¶7A-7D.)

## VI. **BURDEN OF PROOF**

35. The burden of proof with respect to the adjustments made in the December FPAA is on the Commissioner because:

a. The December FPAA fails to identify the factual basis for any of the adjustments or the assertion of any penalties, and thus the burden of proof with respect to such adjustments and penalties is upon the Commissioner; or in the alternative

b. Code Section 7491 imposes the burden of proof with respect to any issue set forth in the December FPAA on the Commissioner.

c. Petitioner has met the requirements of Code Section 7491.

## VII. BECKER PARTNERS' CORRECT TREATMENT OF TAX ITEMS

36. Becker Partners and its partners properly determined all items of tax basis, income, losses, deductions, and credits of Becker Partners, and the partners' bases in Becker Partners, for the taxable year ending December 31, 1998.

37. Becker Partners was a partnership validly created, existing and recognized for all state and federal law purposes, including federal income tax purposes for the taxable year 1998.

38. Neither Becker Partners nor any part of the transactions at issue were a sham for federal income tax purposes.

39. Becker Partners and every part of the transactions at issue had economic substance.

40. The Service may not rely on the sham or economic substance doctrine to change the tax results of the transactions at issue because those doctrines are not incorporated into or otherwise a part of the Code, and/or the use of such theories would violate the separation of powers provisions of the United States Constitution.

41. Becker Partners was not formed or availed of in connection with a transaction or transactions in a manner inconsistent with the intent of Subchapter K of the Code and may not otherwise be disregarded, nor may any of its transactions or the transactions of any of its partners be ignored, disregarded or recharacterized, in whole or in part, under the authority of Treas. Reg. § 1.701-2.

42. Treas. Reg. § 1.701-2 is illegal and invalid and may not be legally used to support an adjustment in this case.

43. Becker Partners and its partners entered into the short sale and acquired stock in M.J. Struckel with a profit motive.

44. Becker Partners and its partners properly determined that the Short Sale "obligations" contributed to Becker Partners in 1998 do not constitute liabilities for purposes of Code Section 752.

45. In the alternative, to the extent that the requirement to cover the Short Sales is a liability for purposes of Code Section 752, the amount of that liability is $0.

46. In every other respect, the federal tax consequences of the transactions at issue in this case are as reported by Becker Partners and its partners on their federal tax returns.

47. Becker Partners and its partners are not subject to penalties under Code Section 6662 because if any tax liability were ultimately determined by this Court against them, such liability is not attributable to: (a) negligence or disregard of rules or regulations; (b) any substantial understatement of income tax; or (c) any substantial or gross valuation misstatement under Chapter 1 of the Code.

48. Becker Partners and its partners are not subject to penalties under Code Section 6662 because if any understatement were ultimately determined by the Court, such understatement would be attributable to items for which the relevant facts were adequately disclosed in the returns or in a statement attached to the returns; and there is a reasonable basis for the tax treatment of such item by the taxpayer.

49. The Transactions at issue in this case do not constitute a tax shelter within the meaning of Code Section 6662.

50. In the alternative, even if the Transactions do constitute a tax shelter, Becker Partners and its partners are not subject to penalties under Code Section 6662 because any understatement ultimately determined by the Court is attributable to the tax treatment of items for which there is or was substantial authority for such treatment, and, furthermore, Becker

Partners and its partners reasonably believed that their tax treatment of such item was more likely than not the proper treatment.

51. There was no gross valuation misstatement because the positions taken by Becker Partners and its partners were correct and, even if they were not, because there was no misstatement of value.

52. Becker Partners and its partners made a reasonable attempt to comply with the provisions of the Code. They did not disregard any rules or regulations, but even if they did so, they did not do so in a manner that was careless, reckless, or intentional.

53. Becker Partners and its partners are not subject to penalties under Code Section 6662 on any underpayment ultimately determined because there was reasonable cause for such underpayment and they acted in good faith as contemplated by Code Section 6664(c)(1).

54. Becker Partners and its partners reasonably relied on the advice of tax professionals in taking the tax positions at issue.

## VIII. PRAYER

WHEREFORE, Plaintiff prays that this Court:

1. Determine that the adjustments made by the Service in the December FPAA are factually and/or legally incorrect and are invalid;

2. Determine that the penalties asserted by the Service in the December FPAA are erroneous and/or that the parties have valid defenses to the assertion of such penalties;

3. Determine that the deposit paid by the Beckers should be refunded, together with interest thereon; and

4. Grant Plaintiff such other and further relief to which Plaintiff is entitled.

Dated: July 6, 2006

Respectfully submitted,

Thomas A. Cullinan
SUTHERLAND ASBILL & BRENNAN LLP
999 Peachtree Street, N.E.
Atlanta, Georgia 30309-3996
Tel: (404) 853-8075
Fax: (404) 853-8806
Attorney for Plaintiff

OF COUNSEL:
N. Jerold Cohen
Sheldon M. Kay
Joseph M. DePew
SUTHERLAND ASBILL & BRENNAN LLP
999 Peachtree Street, N.E.
Atlanta, Georgia 30309
Tel: (404) 853-8000
Fax: (404) 853-8806

Notice 2000 - 44 Case

Internal Revenue Service
15 New Sudbury Street
Stop 41100
Boston, MA 02203

Department of the Treasury

Refer To:
SE:S:E:TS:NAA:1:JH
Taxpayer Identifying Number:

Name of Partnership:
Becker Partners
Partnership Identifying Number:
43-1818459
Tax Year Ended:
December 31, 1998
Date FPAA Mailed to Tax Matters Partner:
FEB 0 8 2006
Person to Contact:
James Heinlin
Employee Identification Number 04-03576
Contact Hours:
8:00 AM - 4:30PM (Monday - Friday)
Contact Telephone Number:
(617) 316-2421

Date: FEB 0 8 2006

Tax Matters Partner
Becker Partners
765 St. Paul Road
Ellisville, MO 63021

## NOTICE OF FINAL PARTNERSHIP ADMINISTRATIVE ADJUSTMENT

The law requires us to send a Notice of Final Partnership Administrative Adjustment (FPAA) to the partnership named above, for the tax year shown above, and to each partner who is entitled to receive this notice.

We are proposing adjustments to the partnership items of the partnership and tax year shown above. We will send the examination report outlining these adjustments to the Tax Matters Partner (TMP) of the partnership. (The TMP is the partner designated by the partnership to deal with the IRS.) He/she is also authorized to act for the partners who are not entitled to receive this notice. Any partner who wants a copy of the examination report should request it from the TMP. If the TMP is unable to provide you with a copy of the examination report, please contact the person named in the heading of this letter.

Taxable Years Ending Before August 6, 1997:

The adjustments to the partnership items reported on the partnership tax return may cause an increase or decrease to the tax liability on your individual return. Form 870-P, *Agreement to Assessment and Collection of Deficiency in Tax for Partnership Adjustments*, is a summary of the proposed adjustments to the partnership return. You can compute your share of the proposed adjustments by multiplying each adjusted partnership item by your percentage interest for that partnership item.

Taxable Years Ending After August 5, 1997:

The adjustments to the partnership items reported on the partnership tax return may cause an increase or decrease in the tax liability on your individual return. The adjustments may include partnership level determinations regarding penalties and additions to tax that relate to adjustments to partnership items. Form 870-PT, *Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts*, is a summary of the proposed adjustments to the partnership return. You can compute your share of the proposed adjustments by multiplying each adjusted partnership item by your percentage interest for that partnership item.

EXHIBIT
A

You have three options available to you:

**1. If you agree with the adjustments:**

Sign and return the enclosed Form 870-P/Form 870-PT. When you sign Form 870-P/Form 870-PT, you are agreeing to pay any additional tax and interest resulting from the adjustments to the partnership return. For tax years ending after August 5, 1997, you are also agreeing to any partnership level determination as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items, if any. In addition, you are waiving your rights to participate in any administrative or judicial proceeding affecting partnership items and in partnership level determinations as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items for the tax year in question. This is a binding settlement only if you sign and return Form 870-P/Form 870-PT and we sign on behalf of the Commissioner of Internal Revenue Service. When we sign the agreement form, the one-year extension of the period of limitations on assessments will begin under Internal Revenue Code section 6229(f). Once the agreement is signed by both parties, you may not file a claim to change the items in question or claim a refund/credit based on a readjustment.

Note: If you are the TMP of the partnership, see the section of this letter entitled, *"For the Tax Matters Partner of the Partnership"*.

**2. If you do not agree with the adjustments:**

If you are the TMP of the partnership and want to contest the adjustments in court, you must file a petition within 90 days from the date of this letter. During this 90-day period, no other partner may file a petition for judicial review. You can file your petition for readjustment of partnership items with:

1. the United States Tax Court;
2. the United States Court of Federal Claims; or
3. the District Court of the United States, in the district of the partnership's principal place of business.

A petition filed by the TMP precludes all other actions. If the TMP doesn't file a petition by the 90th day from the date the FPAA was mailed, any partner or any 5 percent group entitled to receive this notice may petition one of these courts. A "5 percent group" includes any group of partners who together have an interest of five percent or more in profits of the partnership. The petition must be filed after the 90th day, but on or before the 150th day from the date the FPAA was mailed to the TMP. If more than one petition is filed in Tax Court, the first petition filed will go forward. All other petitions (even those filed earlier in one of the other courts) will be dismissed. If no one files a petition in Tax Court, the first petition filed in one of the other courts will go forward and subsequent petitions will be dismissed.

Petitions filed with the United States Tax Court must be mailed to:

**United States Tax Court**
**400 Second Street, NW**
**Washington, DC 20217**

Attach a copy of this letter to the petition. The time in which you must file a petition with the court is fixed by law and the court cannot consider your case if your petition is filed late. If this letter is addressed to both a husband and wife and both want to petition the Tax Court, both must sign the petition or each must file a separate signed petition.

When a partner (including each member of a 5 percent group that files a petition) files a petition in either the appropriate District Court or the Court of Federal Claims, the partner filing the petition must deposit the amount that the partner's tax liability would be increased if the treatment of the partnership items on the partner's return were made consistent with the treatment of partnership items under the FPAA. If you reported the partnership items the way the partnership reported them on its return, you can generally determine the amount to deposit by taking your pro rata share of the partnership adjustments into account in recomputing your tax. You must deposit the appropriate amount with the IRS on or before the day you file your petition.

**3. If you do nothing:**

If a petition for readjustment is not filed in any of the courts listed in this letter, the FPAA becomes final, and we will bill you for any additional tax plus interest that you may owe under the FPAA. You will not be permitted to contest the treatment of the partnership items of the partnership under the FPAA in any refund claim or suit. The law allows the Service to bill you after 150 days from the mailing date of the FPAA to the TMP.

However, if a petition is filed in the Tax Court, and the Tax Court upholds the adjustments in whole or in part, we will not bill you until the Tax Court decision is final.

You may wish to contact the TMP of the partnership or your tax advisor to discuss this matter.

If you have any questions, please write to the person whose name and address are shown in the heading of this letter. If you write, attach a copy of this letter to help identify your account. Also, include your telephone number and the most convenient time for us to call you in case we need additional information.

If you prefer, you may call the IRS contact person at the telephone number shown in the heading of this letter. If this number is outside your local calling area, there will be a long distance charge to you.

Thank you for your cooperation.

Sincerely,

Technical Services Territory Manager Acting
North Atlantic

Enclosures:
Form 870-P/Form 870-PT
Copy of this letter

## FOR THE TAX MATTERS PARTNER OF THE PARTNERSHIP

If you are the Tax Matters Partner (TMP), you are entitled to make an agreement to bind non-notice partners to the treatment of the partnership items as shown on the enclosed schedule of adjustments. You must add the following statement above the signature blocks on the Form 870-P or Form 870-PT:

"The undersigned Tax Matters Partner is signing this offer on behalf of himself (herself) and all other partners whom he (she) has the authority to bind; a final agreement resulting from the co-signature of the Commissioner of Internal Revenue will be binding on all such other partners."

As the TMP, you may submit a petition, as described above for the partnership on behalf of all partners.

If you have any questions, you can call the IRS contact person at the telephone number shown in the heading of this letter. Thank you for your cooperation.

| Form 870-PT (8-2004) | DEPARTMENT OF THE TREASURY – INTERNAL REVENUE SERVICE **Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts** | IN REPLY REFER TO: |
|---|---|---|
| Taxpayer(s) name(s), address and ZIP code: Tax Matters Partner Becker Partners 765 St. Paul Road Ellisville, MO 63021 Taxpayer Identifying Number: | Name of Partnership: **Becker Partners** Taxpayer Identifying Number: 43-1818459 | Tax Year(s) Ended: **December 31, 1998** |
| | Name of Tax Matters Partner: | |

## Offer of Agreement to Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts & Waiver of Restrictions on Assessment for Partnership Items, Penalties, Additions to Tax, and Additional Amounts

Under sections 6224(c) and 7121 of the Internal Revenue Code (IRC) of 1986, the Commissioner of the Internal Revenue Service and the undersigned taxpayer(s) agree to the determination of partnership items and partnership level determinations as to penalties, additions to tax, and additional amounts that relate to adjustments to partnership items as shown on the attached schedule of adjustments.

The undersigned taxpayer(s), in accordance with IRC sections 6224(b) and 6213(d), also waive the restrictions provided by IRC sections 6225(a) and 6213(a) and consent to the assessment and collection of any deficiency attributable to partnership items, penalties, additions to tax, and additional amounts that relate to partnership items, as determined in this agreement; plus any interest provided by law.

This agreement is conditional and will not become effective or final until this agreement form is returned to the Commissioner and is signed on his or her behalf. The one-year extension of the period of limitations on assessments under IRC section 6229(f) will not begin to run until the date the Commissioner's representative signs this form on the Commissioner's behalf. If this is a partial agreement, the period of limitations for assessing any tax attributable to the settled items shall be determined as if this agreement had not been entered into.

If this part of this agreement form is signed for the Commissioner, the treatment of partnership items and partnership level determinations as to penalties, additions to tax and additional amounts that relate to adjustments to partnership items under this agreement will not be reopened in absence of fraud, malfeasance, or misrepresentation of fact. In addition, no claim for an adjustment of partnership items, refund or credit based on any change in the treatment of partnership items or partnership level determinations as to penalties, additions to tax and additional amounts may be filed or prosecuted.

| | |
|---|---|
| Signature of Taxpayer | Date Signed |
| Signature of Taxpayer | Date Signed |
| By (Signature and Title) | Date Signed |

| FOR INTERNAL REVENUE USE ONLY | Date accepted for Commissioner | Signature |
|---|---|---|
| | Office | Title |

DEPARTMENT OF THE TREASURY – INTERNAL REVENUE SERVICE

# Agreement for Partnership Items and Partnership Level Determinations as to Penalties, Additions to Tax, and Additional Amounts

## SCHEDULE OF ADJUSTMENTS

| NAME OF PARTNERSHIP | TAX YEAR(S) ENDED | | |
|---|---|---|---|
| Becker Partners<br><br>TAXPAYER IDENTIFYING NUMBER: 43-1818459 | 12/31/1998 | | |
| DETAIL OF ADJUSTMENTS TO ORDINARY INCOME | | | |
| Interest Income | (94,480) | | |
| Ordinary Dividends | (14,871) | | |
| Net Short Term Capital Gain (Losses) | (52,888) | | |
| Tax Exempt Income | (8,086) | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| TOTAL ADJUSTMENTS TO ORDINARY INCOME | -0- | | |
| OTHER ADJUSTMENTS | | | |
| A. **CAPITAL CONTRIBUTIONS (SCH. M-2 LINE 2)** | | | |
| (1) ADJUSTMENT | (10,976,471) | | |
| (2) AS REPORTED | 10,976,471 | | |
| (3) CORRECTED | -0- | | |
| B. **DISTRIBUTIONS OF MONEY (K-1 LINE 22)** | | | |
| (1) ADJUSTMENT | (4,762,356) | | |
| (2) AS REPORTED | 4,762,356 | | |
| (3) CORRECTED | -0- | | |

REMARKS

- **Reference Exhibit A attached.**

**Accuracy Penalties under IRC Section 6662 are included as a partnership level determination. See Exhibit A, paragraph 8 for a description of the penalties.**

# Form 870-PT, Other Adjustments (Continued)

Page ____ of ____

| NAME OF PARTNERSHIP<br><br>**Becker Partners**<br><br>TAXPAYER IDENTIFYING NUMBER 43-1818459 | TAX YEAR(S) ENDED<br>12/31/1998 | | |
|---|---|---|---|
| C. **NET INCOME PER BOOKS (M-2 Line 3)** | | | |
| (1) ADJUSTMENT | (170,325) | | |
| (2) AS REPORTED | 170,325 | | |
| (3) CORRECTED | -0- | | |
| D. **OUTSIDE PARTNERSHIP BASIS** | | | |
| (1) ADJUSTMENT | (11,006,872) | | |
| (2) AS REPORTED | 11,006,872 | | |
| (3) CORRECTED | -0- | | |
| E. | | | |
| (1) ADJUSTMENT | | | |
| (2) AS REPORTED | | | |
| (3) CORRECTED | | | |
| F. | | | |
| (1) ADJUSTMENT | | | |
| (2) AS REPORTED | | | |
| (3) CORRECTED | | | |
| G. | | | |
| (1) ADJUSTMENT | | | |
| (2) AS REPORTED | | | |
| (3) CORRECTED | | | |
| H. | | | |
| (1) ADJUSTMENT | | | |
| (2) AS REPORTED | | | |
| (3) CORRECTED | | | |
| I. | | | |
| (1) ADJUSTMENT | | | |
| (2) AS REPORTED | | | |
| (3) CORRECTED | | | |

**In Re: Becker Partners**
**Tax Year Ending December 31, 1998**

## EXPLANATION OF ITEMS

**1a. Interest Income** **($94,480.00)**

It is determined that interest income is $0.00 in lieu of the amount of $94,480.00. Reference Exhibit A attached hereto.

**1b. Ordinary Dividends** **($14,871.00)**

It is determined that ordinary dividends is $0.00 in lieu of the amount of $14,871.00. Reference Exhibit A attached hereto.

**1c. Net Short Term Gain (Loss)** **($52,888.00)**

It is determined that net short term gain (loss) is $0.00 in lieu of the amount of $52,888.00. Reference Exhibit A attached hereto.

**1d. Tax Exempt Income** **($8,086.00)**

It is determined that tax exempt income is $0.00 in lieu of the amount of $8,086.00. Reference Exhibit A attached hereto.

**A. Capital Contributions (Sch. M-2 Line 2)** **($10.976,471.00)**

It is determined that capital contributions is $0.00 in lieu of the amount of $10,976,471.00. Reference Exhibit A attached hereto.

**In Re: Becker Partners**
**Tax Year Ending December 31, 1998**

## EXPLANATION OF ITEMS

**B. Distributions of Money ( Sch. K-1 Line 23)** **($4,762,356.00)**

It is determined that distributions of money is $0.00 in lieu of the amount of $4,762,356.00. Reference Exhibit A attached hereto.

**C. Net Income (Loss) per books** **($170,325.00)**

It is determined that the net income (loss) per books is $0.00 in lieu of the amount of $170,325.00. Reference Exhibit A attached hereto.

**E. Outside Partnership Basis** **($11,006,872.00)**

It is determined that the outside partnership basis is disallowed in the amount of $11,006,872.00. Reference Exhibit A attached hereto.

EXHIBIT A – Explanation of Items
**Becker Partners**
Final Partnership Administrative Adjustment Letter
Tax Year Ended: **December 31, 1998** **TIN: 43-1818459**

1. It is determined that neither Becker Partners nor its purported partners have established the existence of Becker Partners as a partnership as a matter of fact.

2. Even if Becker Partners existed as a partnership, this purported partnership was formed and / or availed of solely for purposes of tax avoidance by artificially overstating basis in the partnership interests of its purported partners. The transactions involving a short sale of a Treasury Note, including the formation of Becker Partners, the acquisition of interests in said partnership, the acquisition of the short position in said Treasury Note, the subsequent transfer of said short position in said Treasury Note to Becker Partners, the acquisition of M.J. Struckel and Company, Inc. stock by said partnership, the assignment of the partnership interest in Becker Partners held by Richard Becker/RCB St. Paul Investments LLC to Becker St. Paul Corporation, the sale of 99% of Becker St. Paul Corporation to Becker 1998 Family Trust and the subsequent sale of M.J. Struckel and Company, Inc. stock had no business purpose, lacked economic substance, and, in fact and substance, constitutes an economic sham for federal income tax purposes.

3. It is determined that Becker Partners was a sham, lacked economic substance and, under § 1.701-2 of the Income Tax Regulations, was formed and availed of in connection with a transaction or transactions in taxable year ending December 31, 1998 a principal purpose of which was to reduce substantially the present value of its partners' aggregate federal tax liability in a manner that is inconsistent with the intent of Subchapter K of the Internal Revenue Code. It is consequently determined that:

    a. Becker Partners is disregarded and that all transactions engaged in by said purported partnership are treated as engaged in directly by its purported partners.

    b. The proceeds from the short sale of the Treasury Note and other assets purportedly contributed to Becker Partners, are treated as never having been contributed to said partnership and any gains or losses purportedly realized by Becker Partners are treated as having been realized by its partners.

    c. The purported partners of Becker Partners should be treated as not being partners in Becker Partners.

    d. Contributions to Becker Partners will be adjusted to reflect clearly said partnership's or its purported partners' income.

EXHIBIT A – Explanation of Items
**Becker Partners**
Final Partnership Administrative Adjustment Letter
Tax Year Ended: **December 31, 1998** **TIN: 43-1818459**

4. It is determined that neither Becker Partners nor its purported partners entered into or acquired the short sale Treasury Notes or acquired M.J. Struckel and Company, Inc. stock with a profit motive for purposes of I.R.C. § 165(c)(2).

5. Under I.R.C. § 752, the amount of the partnership liabilities of Becker Partners includes aggregate obligations to close the open short sale position in the U.S. Treasury Note equal to $11,006,872.

    a. An increase in a partner's share of partnership liabilities is treated as a contribution of money to the partnership under I.R.C. § 752(a). Under I.R.C. § 722, such a constructive contribution increases a partner's outside basis in his partnership interest. When the short sale obligations were assumed by Becker Partners, the partnership liabilities of the partnership were increased, and the partners' respective shares of those partnership liabilities were likewise increased, triggering a constructive contribution of cash under I.R.C. § 752(a) that increased their respective outside bases in the partnership under I.R.C. § 722.

    b. A decrease in a partner's individual liabilities by reason of the assumption by the partnership of such individual liabilities is treated as a distribution of money to the partner under I.R.C. § 752(b). Under I.R.C. § 733(1), such a constructive distribution reduces a partner's outside basis in their partnership interests. The contribution of the short Treasury Note position to Becker Partners, and the assumption by Becker Partners of the short sale obligations regarding said Treasury Note decreased the individual liabilities of Richard Becker / RCB St. Paul LLC, the contributing partner, triggering a constructive distribution of cash under I.R.C. § 752(b) that reduced his respective outside basis in Becker Partners under I.R.C. § 733(1) by $11,006, 872.

6. Becker Partners filed an IRC § 754 election to adjust the basis of the assets under IRC § 743(b). It is determined that there is no excess of outside basis over inside basis. Therefore, the IRC § 743(b) adjustment to basis is $0 (zero).

7. Accuracy Related Penalties

   It is determined that the adjustments of partnership items of Becker Partners are attributable to a tax shelter for which no substantial authority has been established for the position taken, and for which there was no showing of reasonable belief by the partnership or its partners that the position taken was more likely than not the correct treatment of the tax shelter and related transactions. In addition, all of the underpayments of tax resulting from those

EXHIBIT A – Explanation of Items
**Becker Partners**
Final Partnership Administrative Adjustment Letter
Tax Year Ended: **December 31, 1998** **TIN: 43-1818459**

adjustments of partnership items are attributable to, at a minimum, (1) substantial understatements of income tax, (2) gross valuation misstatement(s), or (3) negligence or disregarded rules or regulations. There has not been a showing by the partnership or any of its partners that there was reasonable cause for any of the resulting underpayments, that Becker Partners or any of its partners acted in good faith, or that any other exceptions to the penalty apply. It is therefore determined that, at a minimum, the accuracy-related penalty under Section 6662 of the Internal Revenue Code applies to all underpayments of tax attributable to adjustments of partnership items of Becker Partners. The penalty shall be imposed on the components of underpayment as follows:

A. a 40 percent penalty shall be imposed on the portion of any underpayment attributable to the gross valuation misstatement as provided by Sections 6662(a), 6662(b)(3), 6662(e), and 6662(h) of the Internal Revenue Code.

B. a 20 percent penalty shall be imposed on the portion of the underpayment attributable to negligence or disregard of rules and regulations as provided by Sections 6662(a), 6662(b)(1), 6662(c) of the Internal Revenue Code.

C. a 20 percent penalty shall be imposed on the underpayment attributable to the substantial understatement of income tax as provided by sections 6662(a), 6662(b)(2), and 6662(d) of the Internal Revenue Code.

D. a 20 percent penalty shall be imposed on the underpayment attributable to the substantial valuation misstatement as provided by Sections 6662(a), 6662(b)(3), and 6662(e) of the Internal Revenue Code.

It should not be inferred by the determination of the Accuracy Related Penalty in this notice that fraud penalties will not be sought on any portion of an underpayment subsequently determined to be attributable to fraud or that prosecution for criminal offenses will not be sought under IRC § 7201, 7206 or other provisions of federal law if determined to be appropriate.